IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SHANNON L. WELDAY,        )
        )
        Plaintiff,     )    Civil Case No. 07-28-KI
        )
    vs.        )    OPINION AND ORDER
        )
MICHAEL J. ASTRUE, Commissioner    )
of Social Security,        )
        )
        Defendant.    )
_____    )

       Phyllis Burke
       4370 N.E. Halsey Street
       Portland, Oregon  97213

             Attorney for Plaintiff

       Karin J. Immergut
       United States Attorney
       District of Oregon
       Britannia I. Hobbs
       Assistant United States Attorney
       1000 S.W. Third Avenue, Suite 600
       Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Stephanie R. Martz
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Shannon Welday brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Welday suffered from severe impairments of degenerative disc disease of the lumbar spine, right knee pain, and major depressive disorder with anxiety. However, the ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.  The ALJ gave little weight to the VA "individual unemployability" granted effective February 7, 2002.  The ALJ found that both Welday and his wife were not entirely credible concerning Welday's mental and physical

symptoms and limitations.  After reviewing the medical evidence, the ALJ concluded that

Welday retained the residual functional capacity for the wide to full range of light exertion work

with postural, environmental, and vocational non-exertional limitations.  Although Welday could

not perform his past work, the ALJ relied on vocational expert testimony to conclude that

Welday could perform other work such as small products assembly–electronics worker or hand

packager.  Consequently, the ALJ found that Welday was not disabled as defined in the Act.

## FACTS

Welday claims to be disabled since July 30, 2001 due to degenerative disc disease of the

lumbar spine, right knee pain, and major depressive disorder with anxiety.  He was 35 years old

at the time of the ALJ's decision.  Welday had a high school education and worked as a heavy

equipment operator for nine years before he enlisted as a military infantryman.

Welday enlisted in November 2000 and injured his back on July 30, 2001.  He was

medically discharged on February 7, 2002.  Welday claims that he became depressed when told

he had to leave the Army due to his injury.  Welday receives disability compensation from the

Veterans Administration ("VA") for a 90% service-connected disability.

Although Welday's back has improved somewhat since immediately after the injury, he

still complains of severe pain.  Welday takes narcotic pain medication which makes him feel

drunk to the point that Welday does not drive afterwards and primarily lies in bed or on the couch

on his bad days, which occur twice a week.

On better days, Welday gets by taking the narcotics once when he gets up and once when

he goes to bed.  This allows him to take the medication and then get up after resting for 40

minutes to allow the dizziness to subside.  He still cannot drive or have a focused conversation

for five hours after taking the narcotics.  Even on good days, Welday can only sit for about

20 minutes at a time and stand for five to ten minutes at a time.  After three to three and one half

hours alternating positions, Welday needs to lie down for four to six hours.

Welday also complains of depression and anxiety attacks occurring about twice a week.

He was taking an antidepressant medication at the time of the hearing but had stopped taking the

anxiety medication because it was not effective.  Between the pain and the mental impairments,

Welday is extremely irritable and withdraws from his family and other social situations, such as

church.

Welday lives with his wife and three children.  His wife takes care of the household

chores.  Welday's irritability causes him to yell at his wife often, causing her at times to take the

children and retreat to her mother's home.  She corroborates Welday's statements about the

frequency and severity of his pain.  At the time of the last hearing, Welday was having more

trouble with panic attacks and thinking that others had negative opinions of him.  At times, the

heart palpitations from the panic attacks caused Welday to pull the car over so that his wife could

drive the rest of the way.  Although the family used to attend church regularly and socialize

afterward, Welday was no longer able to attend.  He also was withdrawing more frequently from

extended family functions such as barbecues.  Welday would spend time alone in the garage

where he was better able to cope in the quiet environment.

## DISCUSSION

I.    Welday's Credibility

Welday argues that the ALJ improperly rejected his testimony concerning his symptoms

and limitations.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Welday's allegations of depression symptoms and limitations from depression with anxiety features were not entirely credible.

The ALJ noted the inconsistency in Welday's report to Dr. Ramsthel that he developed depression after his discharge from the military, which was February 6, 2002, and his application

for disability insurance benefits which alleged depression since July 1, 2001. This latter date is the date on which Welday injured his back. The injury led to a medical discharge only seven months later. Welday explains that his depression grew as it became clear to him that he would no longer be able to serve in the military. I do not see any inconsistency sufficient to support a finding of not entirely credible.

The ALJ was also concerned that Welday and his family visited relatives in Hawaii for a few weeks in 2004. There is no evidence that Welday engaged in any physical activities while at his relatives' home. Although the plane ride would have required Welday to endure an extensive period without reclining to relieve pain, a claimant can have occasional symptom-free periods, including the sporadic ability to work, and still be disabled under the Act. Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1996). I do not see anything about this trip to support a finding of not entirely credible.

The ALJ concluded that Welday's report to his health care provider that he performed woodworking daily was inconsistent with his allegations of pain. Welday actually told Dr. Nakata on April 12, 2004 that he performed "woodworking daily as much as his pain allows." Tr. 394. At the hearing on March 21, 2005, Welday reported that he stopped woodworking about six months prior because of the pain. The ALJ's reasoning that reports of daily woodworking were inconsistent with Welday's reports of bad days twice a week is not supported by the record.

Finally, the ALJ was concerned that Welday reported that he was unemployed and being supported by his wife when the family was actually receiving his veteran's disability benefits. The ALJ considered this a disincentive to work. I note that none of the VA doctors were

concerned about secondary gain or any insincerity in Welday's symptom reports. Welday was certainly unemployed and, based on the testimony of both Welday and his wife, she performed the vast majority of chores required to keep the five-person family functional. Again, any inconsistency is not sufficient to support a finding of not entirely credible.

Looking at the record as a whole, Welday worked steadily as a heavy equipment operator at one company for nine years. He enjoyed mountain biking, running, woodworking, and other activities. Welday attended church regularly, including socializing after the service. He enjoyed socializing with his extended family. When his company was considering a layoff, Welday decided to enlist in the Army at the age of 30 because he was physically fit and enjoyed physical activity. After the back injury and accompanying depression and anxiety, Welday gave up all of his hobbies, stopped attending church, reduced the time spent socializing with his family, and started retreating to the garage to be alone. Welday told his medical providers that he could not even pick up his children. Because of this complete turnaround in Welday's lifestyle, I see nothing to indicate that he is exaggerating his symptoms or limitations. I find that the ALJ did not provide specific findings stating clear and convincing reasons for determining that Welday was not entirely credible and, thus, improperly rejected his credibility.

II.    VA's Findings

Welday contends that the ALJ did not accord the proper weight to the VA's finding that he was unemployable due to his physical and mental impairments after his medical discharge in February 2002. According to Welday, the ALJ's reason to give little weight to the VA's findings is so vague and conclusory that the reason is unreviewable.

The Commissioner argues that the VA's conclusion was based on an assessment by a physician's assistant, Robert Welsh, and not by any physician. Since the Commissioner contends that the ALJ properly discredited PA Welsh's opinion, the ALJ gave persuasive, specific, and valid reasons for not giving significant weight to the VA rating of unemployability.

A VA disability rating is entitled to great evidentiary weight in a Social Security proceeding. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). Since the VA and SSA criteria for determining disability are not identical, an ALJ may give less weight to a VA rating decision by giving "persuasive, specific, and valid reasons for doing so that are supported by the record." Id.

The VA found that Welday was entitled to a grant of individual unemployability effective February 7, 2002. The ALJ gave little weight to the VA determination "as the medical signs and clinical findings, both by the [VA] and non-[VA] medical sources, do not result in physical or mental functional limitations which would preclude the claimant from performing 'other work' at step 5." Tr. 28-29.

Because the ALJ did not find Welday credible, he gave little weight to the medical providers who relied on Welday's subjective complaints, including Dr. Siegal[1] and Dr. Monkarsh. Dr. Siegal concluded that Welday was unable to work in laborious-type fields and would likely have problems in sedentary employment because he could not sit. Dr. Monkarsh found that Welday's symptoms of depression had increased significantly. Dr.

---

[1] The ALJ appears to be referring to the report of PA Welsh and Dr. Goei as the report of Dr. Siegel. Tr. 308-09. To prevent confusion, I will stay with the ALJ's identification of the document.

Monkarsh assigned a GAF score of 45, indicating serious difficulties in social, work or classroom settings.

Because I concluded that the ALJ improperly found Welday to be not entirely credible, I also conclude that the ALJ erred by discounting these medical opinions because of their reliance on Welday's subjective reports.  Consequently, I find that the ALJ has not given persuasive, specific, and valid reasons for giving little weight to the VA determination of individual unemployability, which was based on these medical providers' conclusions.  Accordingly, I give the VA determination great evidentiary weight.

III.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant.  Id.  On the other hand, "in the unusual case in

which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004).

We have the unusual case here. First, I have the VA finding of individual unemployability to which I give great weight. Second, I credit Welday's testimony concerning his symptoms and limitations. Welday and his wife testified that he has two bad days a week during which he lies on the bed or couch all day, unable to function due to the narcotics required to keep the pain at bay. Moreover, his depression and anxiety, which appear to be worsening, make it impossible for Welday to be around people, even driving his family from the home at times. It is clear that if the ALJ properly credited the testimony, he would have to find Welday disabled. There is no need for an additional hearing.

Accordingly, I remand the case for a finding of disability.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____6th_____ day of February, 2008.

              ___/s/ Garr M. King_____
              Garr M. King
              United States District Judge